[S. F. No. 18215. In Bank. Mar. 23, 1951.]

MONICA COBARRUBIA et al., Appellants, v. ROY BUCHANAN et al., Respondents.

John D. Chinello for Appellants.

Chester O. Hansen and John Said for Respondents.

EDMONDS, J.—The surviving children of Fernando Rodriguez sued to recover damages for the wrongful death of their father. The appeal from the judgment entered upon a verdict in favor of the defendants principally concerns instructions which were given upon the issues of contributory negligence, imputed negligence, assumption of risk, and unavoidable accident.

The accident occurred while Rodriguez was riding in a truck owned and driven by Frank Hernandez. At the intersection of Kearney Boulevard and Grant Avenue, it collided with one driven by Roy Buchanan of which Robert F. Brown was the owner.

Kearney Boulevard is an east-west highway which is divided into two "lanes" by a row of trees. The highway to the

north of the trees, referred to as the "truck lane," is for the use of both eastbound and westbound traffic. It is a paved roadway approximately 10 or 11 feet wide with abutting shoulders from 3 to 6 feet in width.

South of the trees, the highway is for the use of vehicles other than trucks. It is of the same width with abutting shoulders, and is called the "boulevard lane." Grant Avenue, a north-south roadway, intersects at right angles the two lanes and the row of trees, terminating at the southerly line of Kearney Boulevard.

There are no stop signs at the intersection. The thick growth of trees between the truck and boulevard lanes makes the intersection a "blind" one for vehicles moving north on Grant Avenue across the truck lane. Also, fig trees planted on the property adjacent to the northeast corner of the intersection create a "blind crossing" for vehicles traveling west along the truck lane.

According to the testimony of Buchanan, he was driving a pickup truck in an easterly direction along the boulevard lane at a speed of 20 to 25 miles per hour. When approximately 65 feet from the intersection, he decreased his speed and gave a signal for a left turn into Grant Avenue. The turn was made at a speed of 1 to 2 miles per hour. His truck was in low gear when he started to turn, and he increased the speed to 2 or 3 miles per hour as he moved across the truck lane. When approaching the paved portion of the truck lane, he looked to the left and the right.

Buchanan told the jury that he again looked to his right when the front of his vehicle was 2 or 3 feet on the pavement. This time he saw the truck driven by Hernandez. Although his first reaction was to cross in front of the oncoming vehicle, he applied his brakes when 5 or 6 feet onto the paved truck lane. Hernandez did not decrease the speed of 45 to 55 miles per hour at which his truck was moving, and it struck the right front wheel of Buchanan's truck, which was then 5 or 6 feet north of the south pavement line of the truck lane, turning it almost completely around.

Hernandez testified that he was proceeding west along the truck lane, which he knew to be a dangerous road. When 30 or 40 feet from the intersection, he saw the pickup truck entering the truck lane. He did not then know whether its driver intended to turn east on the truck lane or continue north on Grant Avenue.

At this point, Hernandez said, he applied his brakes but

". . . not too much. . . ." When approximately 5 to 8 feet from the intersection, he saw there was going to be a collision. He then applied his brakes "hard." He told the jury that his brakes were in good condition and he could stop the truck within 3 or 4 feet when traveling at 25 or 30 miles per hour.

According to photographs taken at the scene of the accident and the testimony of a highway patrolman, the truck driven by Hernandez left a single skid mark approximately 6 feet long, and tire marks for a distance of 72 feet from the point of collision to the place where the truck was brought to a stop. An expert on brakes testified that if those on the Hernandez truck had been properly adjusted, they would have caused four skid marks instead of one.

Rodriguez was voluntarily riding, with other workmen, in the rear of the truck driven by Hernandez. He had been doing so, almost daily, for two weeks prior to the accident. During that time, Hernandez testified, he traveled the same route and, at the place where the accident occurred, drove at substantially the same rate of speed. Rodriguez had never complained to Hernandez in respect to the manner of driving or the condition of the roadway, nor did he have knowledge of any mechanical defects in the truck.

Upon this evidence, the jury returned a verdict in favor of Buchanan and Brown. Among the several grounds urged for reversal of the judgment, the heirs of Rodriguez contend that there is no evidence which supports the giving of an instruction upon the doctrine of assumption of risk.

At the request of the respondents, the following instruction was given: "You are instructed that if you find from the evidence that . . . Hernandez was operating the Ford truck in which . . . Rodriguez was riding, at a dangerous and excessive rate of speed at and immediately prior to the time of the collision in question, and that such dangerous and excessive rate of speed was a proximate cause of the injury complained of, and if you further find that . . . Rodriguez, *knew that said Ford truck was being operated at a dangerous and excessive rate of speed,* and that he consented thereto, then I instruct you that . . . Rodriguez is deemed in law to have assumed and consented to all risks incurred by reason of such excessive speed." (Italics added.)

Hernandez testified that, when approaching the intersection, his truck was traveling at 25 or 30 miles per hour. Buchanan estimated the speed to be 45 or 55 miles per hour.

Rodriguez and some other men were in the rear part of the truck, behind the driver's cab, but his exact position is not fixed by the evidence. The bed of the truck was surrounded by sideboards some 3 or 4 feet in height, and there is no evidence that Rodriguez was in a position to see over them.

The respondents argue that a passenger need not be in the front seat of a vehicle, looking at the speedometer and roadway ahead, in order to know the speed at which the vehicle is being driven. They assert that the vibration and sound of the truck, an "open air" model, being driven at a speed of 45 or 55 miles per hour "would indicate to one sitting behind the cab its speed, to a certain extent."

The fallacy in this argument is that such a speed was not necessarily "dangerous and excessive." The requirement laid upon a driver is that he shall not drive "at a speed greater than is reasonable or prudent, having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property." (Veh. Code, § 510.) It may be assumed that there is sufficient evidence to support an implied finding of excessive speed. However, the speed was excessive only because of the "blind intersection" at which the accident occurred. The respondents failed to prove that Rodriguez had any knowledge of this intersection although he had ridden with Hernandez upon previous occasions. For all that appears, Rodriguez had never ridden in the truck in a position to see any of the intersections. Neither is there any evidence to show that he had reason to believe Hernandez was a careless or reckless driver. Under these circumstances, the giving of the challenged instruction constituted prejudicial error.

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Schauer, J., concurred.

SPENCE, J.—I dissent.
I am of the opinion that there was no prejudicial error in the instructions and that the judgment should be affirmed.

Respondents' petition for a rehearing was denied April 19, 1951. Spence, J., voted for a rehearing.